FILED

2015 JAN -6 PM 3: 57

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY ___TM___ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

September 2013 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL VANNAK KHEM MISIEWICZ,<br><br>    Defendant. | Case No. 15 CR 0033 JLS<br><br>I N D I C T M E N T<br><br>Title 18, U.S.C., Sec. 371 – Conspiracy; Title 18, U.S.C., Sec. 201(b)(2)(A) and (C) – Bribery; Title 18, U.S.C., Sec. 981(a)(1)(c) and Title 28, U.S.C, Sec. 2461(c) – Criminal Forfeiture |

The grand jury charges:

### INTRODUCTORY ALLEGATIONS

1. From in or about December 2012 until in or about September 2013, defendant MICHAEL VANNAK KHEM MISIEWICZ ("MISIEWICZ") was a Captain-select in the U.S. Navy stationed in Colorado Springs, Colorado. From in or about January 2011 to in or about December 2012, MISIEWICZ served as the Deputy Director of Operations for the Commander of the Seventh Fleet aboard the USS Blue Ridge, home-ported in Yokosuka, Japan. From in or about June 2009 to in or about January 2011, MISIEWICZ served at the rank of Commander as the Commanding Officer for the USS Mustin, a forward-deployed Destroyer-class vessel in the U.S. Navy's Seventh Fleet, home-ported in Yokosuka, Japan.

MWP/RSH:nlv(1):San Diego
1/5/15

2. As a Commander and Captain-select in the U.S. Navy, MISIEWICZ was a "public official" within the definition of Title 18, United States Code, Section 201(a)(1).

3. As early as June 2009, when he assumed command of the USS Mustin, MISIEWICZ first met representatives of Glenn Defense Marine (Asia) ("GDMA"), a multi-national corporation headquartered in Singapore, with operating locations in several other countries, including Japan, Thailand, Malaysia, Korea, Hong Kong, Indonesia, Australia, Philippines, and the United States.

4. GDMA's main business involved the "husbanding" of marine vessels, a service it had provided to the U.S. Navy across Asia under various contracts for over 25 years. "Ship husbanding" involved the coordinating, scheduling, and direct and indirect procurement of items and services required by ships and submarines when those vessels arrive at port. Examples of these items and services included tugboats; fenders; port authority or customs fees; security; food; fuel; water; trash removal; collection, holding, and transfer of liquid waste ("CHT"); and transportation.

5. Leonard Glenn Francis ("Francis"), a citizen of Malaysia who resided in Singapore, was the owner, President, and Chief Executive Officer of GDMA.

6. In or about Summer 2011, the U.S. Navy awarded GDMA three contracts to provide husbanding services to U.S. Navy ships and submarines at ports throughout Southeast Asia (Region 2), Australia and Pacific Isles (Region 3), and East Asia (Region 4).

7. It was a violation of MISIEWICZ's official and lawful duties: (a) to transmit information that the U.S. Navy had classified as "confidential" to any person not entitled to receive it; (b) to

2

make unauthorized disclosure of proprietary, internal U.S. Navy information; and (c) to enrich himself by using his position and influence with the U.S. Navy to advocate for and advance the interests of GDMA and Francis.

### Count 1 - Conspiracy (18 U.S.C. § 371)

8. From in or about early 2011 through in or about September 2013, on the high seas and outside the jurisdiction of any particular district, defendant MICHAEL VANNAK KHEM MISIEWICZ ("MISIEWICZ"), a public official, Leonard Glenn Francis, and others (1) knowingly and unlawfully combined, conspired, and agreed to commit bribery, that is, MISIEWICZ, Francis, and others, knowingly agreed that, in return for MISIEWICZ being influenced in the performance of official acts and being induced to do and omit to do acts in violation of his official and lawful duties, as opportunities arose, (a) Francis would directly and indirectly, corruptly give, offer, and promise things of value to MISIEWICZ, including cash, gifts, travel expenses, entertainment, and the services of prostitutes, and (b) MISIEWICZ would directly and indirectly, corruptly demand, seek, receive, accept, and agree to receive and accept these things of value; and (2) MISIEWICZ and Francis took overt acts in furtherance of this conspiracy and to effect its unlawful object, in violation of Title 18, United States Code, Sections 201(b)(1)(A) and (C) and 201(b)(2)(A) and (C).

### OBJECT OF THE CONSPIRACY

9. It was the object of the conspiracy for MISIEWICZ to provide Francis with classified and other proprietary, internal U.S. Navy information, and to use his position and influence with the U.S. Navy to advocate for and advance the interests of Francis and GDMA, as

opportunities arose, and in return for Francis, GDMA, and others to give things of value to or on behalf of MISIEWICZ, including cash, gifts, travel expenses, entertainment, and the services of prostitutes.

## METHODS AND MEANS OF THE CONSPIRACY

10. In furtherance of this conspiracy, and to accomplish its object, the following methods and means were used, among others:

   a. MISIEWICZ would demand, seek, receive, and accept things of value from Francis, including cash, gifts, travel expenses, entertainment, and the services of prostitutes.

   b. Francis would offer and give things of value to or on behalf of MISIEWICZ, including cash, gifts, travel expenses, entertainment, and the services of prostitutes.

   c. In return for these things of value, MISIEWICZ would provide Francis with classified and other proprietary, internal U.S. Navy information, and would use his position and influence with the U.S. Navy to advocate for and advance the interests of Francis and GDMA, as opportunities arose.

   d. MISIEWICZ would help FRANCIS identify other U.S. Navy officers whom MISIEWICZ believed would accept from Francis things of value in violation of U.S. Navy rules and regulations.

   e. MISIEWICZ would attempt to conceal his corrupt relationship with Francis by creating clandestine email accounts which he used to communicate with Francis.

   f. Francis would take steps to obstruct and impede an ongoing criminal investigation into his relationship with MISIEWICZ, including by bribing a Naval Criminal Investigative Service ("NCIS") Special Agent for information and advice and counsel about the

investigation and by attempting to delete and deleting an email account with the intention of destroying communications between himself and MISIEWICZ.

OVERT ACTS

11. In furtherance of the conspiracy and to effect its objects, the following overt acts, among others, were committed:

    a. On or about February 14, 2011, GMDA and Francis paid for MISIEWICZ's stay at a luxury hotel in Manila, Philippines as well as for the services of prostitutes while there.

    b. On or about February 21, 2011, MISIEWICZ created email account mustfive89@gmail.com, which he used to communicate with Francis and other GDMA employees.

    c. On or about June 24, 2011, Francis paid the expenses for MISIEWICZ's vacation, including his round-trip airfare from Japan to Kuala Lumpur and Cambodia and return to Japan, several nights at a luxury hotel in Kuala Lumpur, and approximately 5000 Malaysian ringgit (approximately $1,500 USD) in spending money.

    d. On or about July 11, 2011, Francis emailed MISIEWICZ asking for ship schedules for port visits to Australia and told MISIEWICZ that he was arranging of the delivery of a package to MISIEWICZ's wife. On or about July 12, 2011, MISIEWICZ provided Francis with the requested classified U.S. Navy ship schedules. Francis replied, confirming he had left a designer handbag for MISIEWICZ's wife with GDMA's Country Manager in Japan.

    e. On or about August 27, 2011, MISIEWICZ emailed Francis advising that the USS John C. Stennis was adding a day to its port visit to Port Klang, Malaysia, a lucrative port for GDMA, and stating: "See, you ask -- I deliver! LoL!".

f. On or about November 25, 2011, Francis arranged and paid for the vacation travel of MISIEWICZ from Japan to Phnom Penh, Cambodia, on to Singapore, and return; MISIEWICZ's mother from Texas to Phnom Penh and Japan, and return; and his brother from Texas to Phnom Penh, and return. This trip included a three-night stay by MISIEWICZ at a luxury hotel in Singapore, paid by Francis.

g. On or about December 7, 2011, MISIEWICZ created the email account lgflittlebro@gmail.com, which he used to communicate with Francis and other GDMA employees.

h. On or about December 31, 2011, MISIEWICZ provided Francis with classified U.S. Navy ship schedules.

i. On or about January 10, 2012, MISIEWICZ provided Francis with classified U.S. Navy ship schedules.

j. After reviewing the ship schedules sent by MISIEWICZ, on or about January 10, 2012, Francis emailed MISIEWICZ demanding that MISIEWICZ use his position and influence to "swing" the USS George Washington to Port Klang instead of Singapore.

k. On or about February 12, 2012, MISIEWICZ provided Francis with classified U.S. Navy ship schedules.

l. On or about April 11, 2012, Francis paid for MISIEWICZ to join him at an expensive dinner in Japan, followed by entertainment at a nightclub, and the services of prostitutes.

m. On or about April 15, 2012, MISIEWICZ provided Francis with updated classified U.S. Navy ship schedules.

n. On or about April 27, 2012, Francis emailed MISIEWICZ airline tickets which Francis had purchased for MISIEWICZ's brother to travel from Texas to Cambodia and return.

  o. On or about May 17, 2012, Francis paid for MISIEWICZ's two-night stay at a luxury hotel in Singapore.

  p. On or about May 19, 2012, Francis advised MISIEWICZ that he had access to tickets to a Lady Gaga concert that he was willing to provide to other U.S. Navy officers and asked, "Who can we trust in the Office for Lady Ga Ga? Tickets are not the issue[.] [W]ho will keep silent:)." MISIEWICZ responded "Well let me think about who might be 'cool'. I think it is tough to determine who keeps quite" and then provided several names of U.S. Navy officers. The next day, MISIEWICZ sent Francis an email identifying an additional U.S. Navy officer to whom MISIEWICZ was thinking of offering a Lady Gaga ticket. Francis responded that this individual was "a good catch on the team."

  q. On or about June 8, 2012, Francis emailed MISIEWICZ asking for updated ship schedules.

  r. On or about June 10, 2012, MISIEWICZ provided Francis with classified U.S. Navy ship schedules.

  s. On or about July 2, 2012, MISIEWICZ asked Francis to make arrangements for MISIEWICZ and three of his children to travel on a two-week vacation from Japan to Singapore, Cambodia, and Malaysia. Francis paid for this trip, including stays at luxury hotels in Singapore and Malaysia.

  t. On or about September 5, 2012, Francis paid for two nights in a luxury hotel and the services of prostitutes for MISIEWICZ in Singapore.

  u. Following several requests from Francis that MISIEWICZ advocate for routing U.S. Navy ships to Sepangar, Malaysia, on or about September 15, 2012, MISIEWICZ sent an email to several officers

in the U.S. Navy's Seventh Fleet which advocated for the USS John C. Stennis to make a port call in Sepangar, instead of another port.

   v. On or about November 19, 2012, Francis arranged to pay for MISIEWICZ to travel on vacation from Japan to Malaysia, Cambodia, Singapore, and back to Japan, including luxury hotel stays and entertainment expenses.

   w. On or about April 11, 2013, Francis received information from an NCIS Special Agent to whom he was paying bribes that criminal investigators had seized MISIEWICZ's email and that "he had not deleted anything for several years." On or about April 15, 2013, referring to the investigation, the NCIS Agent advised Francis that "[MISIEWICZ's] email will give them some leads."

   x. On or about July 19, 2013, after receiving confidential law enforcement sensitive information from the NCIS Agent to whom he was paying bribes, Francis contacted MISIEWICZ via Blackberry Messenger about the ongoing criminal investigations, telling him: "[The] cases are closing."

All in violation of Title 18, United States Code, Section 371.

### Counts 2 – 8 - Bribery
### (18 U.S.C. § 201(b)(2)(A) and (C))

  12. The allegations in Paragraphs 1 through 6 and 9 through 11 of this Indictment are incorporated by reference.

  13. On or about the dates set forth in Column "A," on the high seas and outside the jurisdiction of any particular district, defendant MICHAEL VANNAK KHEM MISIEWICZ ("MISIEWICZ"), a public official, directly and indirectly, corruptly demanded, sought, received, accepted, and agreed to receive and accept the things of value set forth in Column "B," in return for being influenced in the

performance of official acts and in return for being induced to do or omit to do things in violation of his official duties, all as opportunities arose, including providing classified and other internal, proprietary U.S. Navy information to Francis and GDMA, and using MISIEWICZ's position and influence within the U.S. Navy to advocate for and advance the interests of Francis and GDMA, with each demand, receipt, and acceptance of a thing of value constituting a separate Count of this Indictment:

| COUNT | "A" – DATE | "B" – ITEMS OF VALUE |
|---|---|---|
| 2 | June 24, 2011 | Travel expenses for travel to Kuala Lumpur, Malaysia and Cambodia and approximately $1500 cash. |
| 3 | Nov. 25, 2011 | Travel expenses for MISIEWICZ's travel from Japan to Cambodia and Singapore; his mother's travel from Texas to Cambodia and Japan, and return; and his brother's travel from Texas to Cambodia, and return. |
| 4 | Apr. 27, 2012 | Travel expenses for MISIEWICZ's brother to travel from Texas to Cambodia and back. |
| 5 | May 17, 2012 | Hotel expenses at a luxury hotel in Singapore |
| 6 | July 2, 2012 | Travel expenses for MISIEWICZ and three family members to travel from Japan to Cambodia, Singapore, and Malaysia. |
| 7 | Sept. 5, 2012 | Hotel expenses at a luxury hotel, and prostitute services in Singapore. |
| 8 | Nov. 19, 2012 | Travel expenses for MISIEWICZ's travel from Japan to Malaysia, Cambodia, Singapore, and back to Japan. |

All in violation of Title 18, United States Code, Section 201(b)(2)(A) and (C).

//
//
//

**FORFEITURE ALLEGATIONS**

14. The allegations set forth in Counts 1 through 8 of this Indictment are incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(c), and Title 28, United States Code, Section 2461(c).

15. Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given to the above-named defendant that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Section 981(a)(1)(c), and Title 28, United States Code, Section 2461(c), including but not limited to all property, real or personal, which constitutes or is derived from proceeds traceable to any conspiracy to commit bribery or bribery, as alleged in this Indictment.

All pursuant to Title 18, United States Code, Section 981(a)(1)(c), and Title 28, United States Code, Section 2461(c).

DATED: January 6, 2015.

_____
Foreperson

LAURA E. DUFFY
United States Attorney

By: _____
MARK W. PLETCHER
ROBERT S. HUIE
Assistant U.S. Attorneys

WILLIAM J. STELLMACH
Acting Chief, Fraud Section
Criminal Division

By: _____
CATHERINE VOTAW
BRIAN R. YOUNG
Trial Attorneys
Fraud Section,
Criminal Division

10